UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 04-94-KSF

UNITED STATES OF AMERICA                                                      PLAINTIFF

V.                                        **OPINION & ORDER**

JOSHUA JAMES FLOYD, *et al.*                                  DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

Walter Edward Floyd, the father of the defendant Joshua James Floyd, has filed this ancillary proceeding, asserting a legal interest in real property subject to a preliminary judgment of forfeiture. This matter is currently before the Court on the parties' cross motions for summary judgment. [DE ## 517, 520]

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On June 28, 2004, two Lexington police officers observed Joshua Paige York ("York") and another male subject place three large duffel bags into the trunk of York's vehicle at 1317 Colorado Court, Lexington, Kentucky. The officers followed York and subsequently conducted a traffic stop. During a search of York's vehicle, the officers found a marijuana cigarette, $1,000.00 in U.S. currency and thirty pounds of marijuana.

After arresting York, officers obtained a search warrant for 1317 Colorado Court. Officers executed the search warrant on the residence and discovered, among other items, approximately 300 pounds of marijuana packaged and labeled in vacuumed heat sealed plastic bags inside several freezers, $551,000.00 in U.S. currency in four safes, and drug debt records, notes and ledgers. The

two residents of 1317 Colorado Court provided law enforcement with a business card from Tubby's Seafood and stated that the marijuana was transported to Lexington in a Tubby's Seafood van.

The United States alleges that Joshua James Floyd ("Floyd") owns Tubby's Seafood and the refrigerated van. Drug Enforcement Agents identified Floyd and Daren Mabunda as the organizers and leaders of a drug conspiracy that operates out of Reno, Nevada.

Agents in Reno executed a search warrant on Floyd's residence and other property in Reno, including the real property at issue in this matter - 1575 Bedford Court, Reno, Nevada. Agents found small quantities of marijuana and a money counter at Floyd's residence. Additionally, as a search was about to be executed on Floyd's apartment, Gabriel Caballero and Michael Carpenter were found in a moving truck. They admitted that they had moved freezers from Floyd's residence. A search warrant was thus obtained for a storage facility that contained fourteen floor freezers that smelled of marijuana and contained small amounts of marijuana residue.

An indictment and superseding indictment were subsequently returned by a federal grand jury in the Eastern District of Kentucky on August 7, 2004 and September 2, 2004, respectively, charging Floyd, Mabunda, Caballero, York and others with various crimes related to the alleged drug conspiracy and including a forfeiture count relating to, *inter alia*, the real property situated at 1575 Bedford Court. During the course of the criminal proceedings, the real property at 1575 Bedford Court was sold and the proceeds in the amount of $124,237.54 were placed in the United States Marshals Seized Assets Funds. Floyd and Mabunda ultimately plead guilty to the crimes charged in the superseding indictment, both agreed to forfeit the proceeds from the sale of 1575 Bedford Court, and a Preliminary Judgment of Forfeiture was entered. Sophia Floyd, the wife of Josh Floyd, filed a claim to several items of forfeited property, including the proceeds from the sale of 1575

Bedford Court, but later agreed to forfeit her interest in said proceeds.

Walter Edward Floyd (the "Claimant") has filed a third party claim stating that he has an equitable interest in 1575 Bedford Court and that the proceeds from the sale belong to him. Discovery has been completed, and the parties' cross motions for summary judgment are now ripe for review.

## II.     APPLICABLE CRIMINAL FORFEITURE PROVISIONS

Under federal law, defendants who violate the federal drug statutes must forfeit to the United States "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation," and "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. §§ 853(a)(1) and (2). The government's interest vests in the property at the time of the act giving rise to the forfeiture. 21 U.S.C. § 853(c).

Third parties may assert claims to property subject to criminal forfeiture through an ancillary proceeding pursuant to 21 U.S.C. § 853(n). In order to successfully challenge an order of forfeiture, a petitioner must establish by a preponderance of the evidence that:

(1) he has a legal right, title, or interest in the property subject to forfeiture that was either vested in him instead of the defendant, or superior to any right of the defendant, at the time of the commission of the acts giving rise to forfeiture, as required by § 853(n)(6)(A); or

(2) he acquired a legal right, title, or interest in the property from the defendant as a bona fide purchaser for value who was, at the time of the purchase, reasonably without cause to believe that the property was subject to forfeiture, as required by § 853(n)(6)(B).

These ancillary proceedings are governed by Rule 32.2 of the Federal Rules of Criminal Procedure. Rule 32.2(c)(1)(B) provides that upon the conclusion of discovery, and before conducting a hearing

on the matter, a party may move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Crim.P. 32.2(c)(1)(B).

**III.    SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## IV. ANALYSIS

Both the Claimant and the United States have filed motions for summary judgment. The relevant facts, as alleged by the Claimant, are as follows. The 1575 Bedford Court property was constructed in 1989 and title was held in the Claimant's name. Then, in 1992 or 1993, the Claimant borrowed money from Harry Schwengber to pay off the construction loan. To secure this loan from Schwengber, the Claimant signed a promissory note and a first deed of trust in favor of the Schwengber Family Trust. During the mid-1990s, the Claimant and his business, U.S. Realty, Inc. ("U.S. Realty"), were unable to make payments to the Schwengber Family Trust and foreclosure proceedings were subsequently instituted. On March 3, 1997, the Schwengber Family Trust obtained legal title to 1575 Bedford Court by Trustee's Deed.

Shortly thereafter, the Claimant resumed payments on the 1575 Bedford Court property and was allowed to continue to reside at the property. From 1997 and 2002, the payments were made by U.S. Realty, Inc, a corporation of which the Claimant is the sole shareholder. The Claimant vacated the property in 1998, and in 1999 Mabunda occupied the property under a lease-option purchase agreement, although he never exercised the option. Mabunda continued to occupy the property until 2003 or 2004.

In 2002, the Claimant attempted to purchase the property from the Schwengber Family Trust. Leo Rossow agreed to advance the money to the Claimant in return for a new first trust deed. Because of the Claimant's credit history, the Claimant claims he was unable to obtain a policy of title insurance. As a result, the Claimant claims that he caused the title and the trust deed beneficiary to be in the name of his son, Josh Floyd, and his wife, Sophia Floyd. Josh never paid any money to

Rossow and the Claimant argues that the intent of the parties was for Josh and Sophia Floyd to hold the subject property as "strawman holders" in trust for the Claimant. Payments to Rossow were made by U.S. Realty and were treated as retained earnings for the Claimant.

On August 9, 2004 and September 2, 2004, the Claimant and Josh Floyd executed an exclusive listing agreement in favor of U.S. Realty and the property was ultimately sold to Darla Fink on August 23, 2004 for $350,000. After paying Rossow and other encumbrances, or charges, the net sale proceeds were $124,237.54; this amount was ultimately deposited in the U.S. Marshals Service Account.

On December 26, 2006, the Claimant was indicted in the District of Nevada and ultimately pled guilty to one count of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I). In the plea agreement, the Government agreed not to recommend a fine or forfeiture of property.

### A. WHETHER THE CLAIMANT HAD A SUPERIOR RIGHT, TITLE OR INTEREST AT THE TIME OF COMMISSION OF THE DRUG TRAFFICKING ACTIVITY

There is no dispute that the Claimant originally held the title to 1575 Bedford Court upon its construction in 1989. However, in 1997 the Claimant lost his vested, legal title to the property based on the foreclosure instituted by the Schwengber Family Trust. The criminal acts giving rise to the convictions in this matter began in 1999 and continued until 2004. Pursuant to 21 U.S.C. § 853(c), all right, title, and interest in 1575 Bedford Court vested in the United States in 1999 upon the commission of the acts giving rise to the forfeiture. It was not until 2002 or 2003 that the Claimant alleges that title to 1575 Bedford Court was transferred to Josh and Sophia Floyd as "strawman holders" of the property in trust for the Claimant. Thus, at the time of the commission of the drug trafficking activity, the Claimant did not have a superior right, title, or interest in 1575 Bedford Court

and thus the Claimant cannot succeed under 21 U.S.C. § 853(n)(6)(A).

> **B. WHETHER THE CLAIMANT IS A BONA FIDE PURCHASER FOR VALUE OF THE RIGHT, TITLE OR INTEREST IN THE PROPERTY AND, AT THE TIME OF PURCHASE, WAS REASONABLY WITHOUT CAUSE TO BELIEVE THE PROPERTY WAS SUBJECT TO FORFEITURE.**

Next, the Claimant argues that he was a bona fide purchaser for value of 1575 Bedford Court with no knowledge that the property was subject to forfeiture. The Claimant argues that there is no evidence that he knew Mabunda was using 1575 Bedford Court as a storage place for marijuana or that payments for 1575 Bedford Court were laundered drug proceeds.

The United States relies on the affidavit of Mabunda to establish that the Claimant knew that 1575 Bedford Court was the fruit or instrumentality of the drug trafficking conspiracy. The United States also argues that there is no evidence that any of the payments for 1575 Bedford Court came from the Claimant. The fact that U.S Realty made payments on the property, according to the United States, does not amount to evidence that the Claimant payed for or purchased 1575 Bedford Court. Moreover, the United States argues that any payment made from U.S. Realty on 1575 Bedford Court originated with the illegal drug trafficking proceeds of Mabunda and Josh Floyd.

The Claimant, on the other hand, moves to strike Mabunda's affidavit and the U.S. Realty earnings report on the grounds that they constitute discovery violations. However, whether or not the Claimant was a bona fide purchaser and knew 1575 Bedford Court was the fruit or instrumentality of the drug trafficking conspiracy are disputed issues of material fact, and preclude the entry of summary judgment. Thus, the motion to strike Mabunda's affidavit and the earnings statement is moot.

  **C. ESTOPPEL**

  The Claimant also makes the alternative argument that the United States is estopped from seeking forfeiture in this action based on his plea agreement entered in the United States District Court for Nevada. The Court disagrees. Criminal forfeiture is part of a sentence imposed against a defendant and requires a correlating conviction in criminal court. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995); *United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003). There must be a nexus between the property sought to be forfeited and the offense for which the defendant is convicted. *United States v. Messino*, 382 F.3d 704 (7th Cir. 2004).

  In the Claimant's criminal case in the District of Nevada, the plea agreement states that "on or about March 24, 2004, defendant WALTER EDWARD FLOYD, assisted Daren Mabunda and Josh Floyd in efforts to launder drug proceeds from their marijuana trafficking activities in the District of Nevada and Eastern District of California." Specifically, the money laundering at issue in that criminal action was related to real property in Doyle, California. Thus, the only real property potentially subject to forfeiture in that action was in Doyle, California. The plea agreement in no way involved any alleged offense related to 1575 Bedford Court.

  On the other hand, the criminal case before this Court was directly related to 1575 Bedford Court. The defendant, Josh Floyd, was the title holder and the illegal drug proceeds of Josh Floyd and Mabunda were used to pay for Bedford Court. The Claimant's plea agreement in the District of Nevada, based only on money laundering in connection with real property in Doyle, California, cannot estop the Government from seeking forfeiture on different property based on different facts among different parties. Thus, the Claimant's estoppel claim must fail.

## V. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby

ORDERS:

(1) the motion of the Claimant, Walter Edward Floyd, Jr, for summary judgment [DE # 517] is DENIED;

(2) the motion of the United States of America for summary judgment [DE # 520] is GRANTED IN PART to the extent that the Claimant cannot prevail on his claim based on 21 U.S.C. § 853(n)(6)(A) or estoppel, and DENIED in all other respects; and

(3) this matter is SET FOR A HEARING on Thursday, September 20, 2007, at 10:00 a.m. in Courtroom D, United States Courthouse, Lexington, Kentucky, to determine whether the Claimant should prevail on his claim based on 21 U.S.C. § 853(n)(6)(B).

This July 31, 2007.

Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**